Tucker, P.
I shall say nothing on the first point in this case, which has been so satisfactorily disposed of by my brother Parker, except to declare my concurrence with him in the result to which he has come.
Taking the instrument of emancipation, then, in this case, to be a good deed, we are brought to the enquiry whether the children of the mother born after the execution of the deed are subject to the creditor’s execution ?
And here let me say at once, that this case must be ruled by the act of assembly, and brought within the operation of the proviso, or the creditor must fail. The case of Woodley v. Abby, 5 Call 336. decided by a divided court, and standing altogether alone, does not form so imperative a rule as to compel us to embrace it with all its consequences. If these cases of emancipation are to be brought within the rules of law as to fraudulent alienations, then emancipated slaves are not only liable to the subsisting debts of the emancipator, but if he was in embarrassed circumstances, they would be chargeable, by a fishing bill, for prospective debts also. I cannot think that such a construction would be obedient to a statute, whose emphatic terms declared that the slave emancipated under it should be as free, to all intents and purposes, as if emancipated by the act itself. Emancipation is not strictly a gift oi property. It is the exoneration of a human being from the bonds which our institutions have fastened upon him, and which the beneficence of our times has authorized the master to remove. Still less can I look upon it as a gift without consideration. The considerations mo *522 ving to the act are of the gravest character, and but for the proviso in the statute, I should consider the emancipated slave as forever discharged from the credilor’s demand, at least where it has not assumed the character of a direct lien. I shall therefore proceed to consider the case under the law as it now stands.
First, let us see what is the immediate effect of the whole statute upon the condition of the slave. And here it is clear that by the deed of emancipation he is instantly emancipated and set free; he is, upon its execution, entirely and fully discharged from servitude, and “ enjoys as full freedom as if he had been particularly named in the act.” He is entitled immediately to a copy of the instrument of his emancipation’, from, the clerk. He is at once invested with all the rights of a freeman, except those political rights from which, by other laws, every black is excluded. With the protection of his free papers, he may go where he pleases without question. He is at once entitled to acquire and enjoy property. His person is under the protection of the laws, and he has a right to sue for injuries done to person or to property. He may even acquire lands and hold slaves, and will transmit them by inheritance to his children. If charged with a capital of-fence, he is tried like a freeman, and the law throws around him the saíne protection of a grand jury, and the same right of challenge to his triers, which the white man enjoys. And all this notwithstanding the proviso; of which we need no better evidence than this, that were it otherwise, no free negro could have these privileges who claims his freedom since 1792, inasmuch as all have been subject to the operation of that proviso.
Lavinia, then, upon the execution of this deed, became to all intents and purposes free; subject indeed to be taken by execution for the antecedent debts of her master, but still free. Whatever might be the ef *523 feet of an execution levied upon her, and a sale under it to satisfy a debt, until such levy and sale she is unquestionably free. If the creditor does not elect to levy the execution upon her, her enjoyment of freedom is not disturbed. If, out of the avails of her labour, or by the aid of others, she can discharge the debt, her freedom cannot be disturbed. If an execution is even levied upon her, yet if she can shew that there is other property to satisfy the debt, it will be held liable (Woodley v. Abby, 5 Call 350.) and she will continue to enjoy her freedom, which never can even be suspended until a sale. For even though there be no other means of satisfying the debt, she would not be sold absolutely, but only for such a length of time as would be necessary to discharge it. Patty v. Colin, 1 Hen. & Munf. 519. What would be her state during that time, has not been settled by any adjudicated case. But 1 should humbly apprehend that in such a case, at least, as that of a temporary sale, though the purchaser would exercise over her the rights of a master, she would not be considered as a slave. If she were so considered, all her acquired property would devolve upon her master, and all her other rights as a freewoman would be annihilated, though her term of service might be but for a year, and though she should at any time be enabled to redeem herself by discharging the debt.
Be this as it may, Lavinia became absolutely free upon the execution of the deed, subject only to a charge for payment of debts. She never has had an execution levied on her, and if living, she is now free, and has been so ever since 1817. Her status then has always, since 1817, been that of a freewoman, and so still continues. If then her children follow the condition of the mother, according to the maxim “partus sequilur ventrem,” her children must be free, as she was free when they were born, and has always continued free since, and still so continues, if living. If it be otherwise, it *524 leads to this singular consequence, that her emancipation is perfected by the sale of them; it is consummated forever (provided there be no further debt) by the satisfaction of this execution by the sale and perpetual servitude of her children. She who was born a slave, and expressly subjected to the debt, is made free; and those who were born free, and not expressly subjected by the act, are made slaves.
But it is said that the qualification attached to the emancipation of Lavinia, of liability to execution, extended to those who were born afterwards in her stale of freedom. I think not. We should not extend the proviso of the statute to those whom it does not expressly embrace, nor should we adopt a principle in direct conflict with what is now the well established ' law of the land. In Maria &c. v. Surbaugh, 2 Rand. 228. this court decided that the condition of the child was to be determined by the existing condition of the mother at the time of its birth, without regard to any changes in that condition by any possible future event. It decided that a child born in the actual status of slavery of the mother was absolutely a slave for life, although the day after its birth the mother’s enjoyment of her freedom accrued under a deed of long anteriour date. If then the child can derive no advantage from the certain prospective freedom of the mother, shall he be prejudiced, on the other hand, by the uncertain contingency of her subsequent reduction to slavery? If we mete out equal and impartial justice to all, we cannot affect the child by a possible change of status in one direction, when we deny him the benefit of a certain change in another. We cannot refuse to consider him as following the status of his mother at the time of his birth, when he will thereby become free, since we hold him to that status by which he is made a slave. Accordingly, we find judge Green declaring in Maria &c. v. Surbaugh (and judge Cabell concurred) “ that the *525 civil state of the children, with all its consequences, is determined by the civil state of the mother at the time of their birth, without regard to the present obligation of a free woman to serve, or the present right of a slave to be free, thereafter. The sole enquiry is whether, at the time of the birth of the children, the mother be in fact slave or free, without regard to what may be her future state.” And judge Brooke observes that “the rule that children shall be bond or free according to the condition of the mother, imports the condition at the time of the birth, in exclusion of any future right to libertyand by consequence (I will add) in exclusion of any future obligation to servitude.
These views might be much enlarged and illustrated; but 1 shall content myself with what has been said, as presenting the reasons upon which 1 am clearly of opinion to affirm the judgment.
Judgment affirmed.